**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alvin Provencio,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael Astrue, Commissioner of Social Security,<br><br>    Defendant. | No. CV-10-01242-PHX-NVW<br><br>**ORDER** |

Plaintiff Alvin Provencio applied for disability benefits in July 2005, was denied in October 2005, and denied again upon reconsideration in February 2007. He then received a hearing before an ALJ, and the ALJ denied benefits as well. Provencio has appealed to this Court under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court will affirm the ALJ's decision.

**I.   Standard of Review**

The Court will uphold the ALJ's final decision if it is supported by substantial evidence and not based on legal error. *See* 42 U.S.C. § 405(g); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). The substantial evidence standard requires the evidence, as a whole, to be "more than a mere scintilla but not necessarily a preponderance" and otherwise sufficient such that "a reasonable mind might accept [the evidence] as adequate to support a conclusion." *Tomassetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (internal quotation marks omitted). Further, if the "evidence is susceptible to more than one rational

interpretation" and the ALJ's decision is supported by one such rational interpretation, the Court will affirm the ALJ. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

The Court will review only the issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 235 F.3d 503, 517 n.13 (9th Cir. 2001). The Court will not reverse for harmless error, which exists "when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tomassetti*, 533 F.3d at 1038 (internal quotation marks omitted). However, the Court will "review the ALJ's decision based [only] on the reasoning and factual findings offered by the ALJ." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 2009). The Court will not "attempt to intuit what the adjudicator may have been thinking." *Id*.

**II.     Background & Procedural History**

**A.     Provencio's Medical Conditions**

Provencio's alleged disability resulted from a car accident on December 11, 2004, discussed in further detail below. Before that car accident, Provencio worked as a loader/unloader of modular furniture from semi trucks, as well as an installer of such furniture. He also fabricated and built large metal signs, such as freeway signs.

On December 11, 2004, Provencio was involved in a car accident, fracturing his right femur and the T12 vertebrae. Dr. William Martin surgically repaired Provencio's femur soon after, including insertion of metallic pins. Another doctor prescribed a back brace to treat the spinal injury. In the years since this accident, Provencio had another surgery to remove the hardware in his leg, and a third surgery to fuse certain vertebra.

Provencio has seen many doctors since his accident, including physicians from whom he has sought treatment and physicians and psychologists who examined him on behalf of the state for disability proceedings. The treating physician Provencio appears to have seen most regularly is Dr. Bronislava Shafran, a neurologist and pain management specialist. In an undated medical record, Dr. Shafran opined that Provencio cannot sit or stand for more than two hours and needs frequent 15-minute rest periods to recover from pain. Dr. Shafran

1  also opined that Provencio could lift no more than 20 pounds and should avoid bending or
2  stooping.
3        In contrast to Dr. Shafran, various other physicians opined that Provencio retained
4  much more physical ability.  At one point, Provencio's orthopedic surgeon, Dr. Martin,
5  believed Provencio could handle sedentary work, with the following restrictions: lifting of
6  25 pounds occasionally and 20 pounds frequently; stand or walk for less than two hours in
7  an eight hour day; sit for 6-8 hours in an eight hour day; sit-stand option; and no climbing,
8  crouching, crawling, or working around heights.  At another point, Dr. Stanley Levin
9  (apparently an examining physician) evaluated Provencio's vocational abilities.  He recorded
10 good range of motion in the neck, normal sensation in the extremities, normal gait, and some
11 moderate bending and kneeling limitations.  Dr. Levin advised against heavy work requiring
12 balance on high places, but concluded that Provencio had no limitations with activities such
13 as handling, fingering, reaching, and bending.
14       A state agency consultant, Dr. Stephen Otto, specifically evaluated Provencio's
15 residual functional capacity.  Dr. Otto concluded that Provencio could lift 20 pounds
16 occasionally and 10 pounds frequently; stand, walk, or sit for six hours in an eight hour day;
17 and frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.
18       Another state agency consultant, Dr. Quirino Valeros, also examined Provencio and
19 performed something like a residual functional capacity assessment. Dr. Valeros concluded,
20 among other things, that Provencio drives without any difficulty, but has some walking,
21 running, and heavy lifting limitations — although he can perform work requiring moderate
22 walking or lifting.
23       The record also contains evidence that Provencio can ride a bicycle, do some yard
24 work, cook, shop for food, and play basketball.
25       **B.**    **The ALJ Hearing**
26       At Provencio's hearing before the ALJ, he answered various questions about his
27 physical capacity. He told the ALJ that he can stand for "approximately five hours" and can
28 sit comfortably for "an hour and a half, two hours." Provencio later elaborated that his hip

- 3 -

pain requires him to walk around for a while after sitting, such that if he did so at a job, "it'd be like taking a lunch every couple of hours" and "[i]n bosses' eyes I would have been fired."

A vocational expert also testified at Provencio's hearing. The ALJ asked the vocational expert about the sorts of jobs available to a 38-year-old person who can lift 20 pounds occasionally and 10 pounds on a more frequent basis; cannot crawl, crouch, climb, squat, or kneel; cannot use the feet or legs for pushing or pulling; and needed a sit-stand option. The vocational expert responded that such a person could work as a parking lot attendant or a cashier. The vocational expert also testified that sufficient numbers of such jobs exist in both Arizona and the national economy.

### C. The ALJ's Decision

The ALJ concluded that Provencio

> has the following impairments which are severe when they are considered in combination: a hip fracture and thoracic spine fractures sustained during the serious motor vehicle accident, he is status-post hip surgery and removal of hardware, status-post stabilization and fusion of the mid-back T11 to L1, and he has an adjustment disorder with mixed anxiety and depression, and alcohol addiction in remission.

The ALJ further concluded that this combination of impairments did not meet or medically equal a listed impairment. The ALJ therefore went on to assess Provencio's residual functional capacity. According to the ALJ, Provencio can

> perform light unskilled work . . . . He can lift and/or carry 10 pounds frequently and 20 pounds occasionally with the option to alternate between sitting and standing during the workday. [He] is unable to crawl, crouch, climb, squat or kneel, and cannot use his lower extremities for pushing or pulling including the operation of leg or foot controls.

The ALJ supported this residual functional capacity assessment with a detailed analysis of the opinions and treatment records from Provencio's various doctors. The ALJ concluded that those opinions and treatment records all supported the residual functional capacity assessment save for the opinion of Dr. Shafran, who believed that Provencio was much more limited and needed many breaks while on the job. The ALJ discounted Dr.

- 4 -

1 Shafran's opinion because of its inconsistencies with all the other medical opinion evidence,
2 because it "appears to be beyond the scope of [Dr. Shafran's] specialty is a pain specialist,"
3 and because it "appears to be based primarily on the claimant's subjective complaints."

4 Based on the testimony of the vocational expert, the ALJ then concluded that
5 Provencio's residual functional capacity would not allow him to perform his previous work,
6 but that he could work as a parking lot attendant or cashier. Accordingly, the ALJ denied
7 disability benefits.

8 **III. Analysis**

9 Provencio challenges the ALJ's residual functional capacity assessment. Provencio
10 specifically objects to the manner in which the ALJ credited and discredited the various
11 medical opinions offered as evidence, especially Dr. Shafran's opinion. Provencio
12 apparently argues — although his briefs are not very clear on this — that he would not
13 qualify for any job (and therefore merit disability payments) if the ALJ had fully credited Dr.
14 Shafran's opinion when evaluating his residual functional capacity.

15 In weighing medical opinions in Social Security cases, the Ninth Circuit distinguishes
16 among three types of physicians: (1) treating physicians, who actually treat the claimant
17 (such as Drs. Shafran and Martin); (2) examining physicians, who examine but do not treat
18 the claimant (such as Drs. Otto, Valeros, and Levin); and (3) non-examining physicians, who
19 neither treat nor examine the claimant (apparently none in this case). *Lester v. Chater*, 81
20 F.3d 821, 830 (9th Cir. 1995). Generally, more weight should be given to the opinion of a
21 treating physician than to the opinions of non-treating physicians. *Id.* A treating physician's
22 opinion is afforded great weight because such physicians are "employed to cure and [have]
23 a greater opportunity to observe and know the patient as an individual." *Sprague v. Bowen*,
24 812 F.2d 1226, 1230 (9th Cir. 1987). Where a treating physician's opinion is contradicted
25 by another physician's opinion, it may not be rejected without "specific and legitimate
26 reasons" supported by substantial evidence in the record. *Lester,* 81 F.3d at 830.

27 Here, the ALJ gave specific and legitimate reasons, supported by substantial evidence,
28 for discounting Dr. Shafran's opinion. The ALJ thoroughly described the various doctors'

- 5 -

1  opinions and concluded that Dr. Shafran's opinion was an outlier among both treating and
2  examining physicians. Every other physician concluded that Provencio retained an ability
3  to perform some work. The ALJ laid out this conflict between Dr. Shafran's opinion and the
4  other opinions in detail, and the ALJ legitimately decided that Dr. Shafran's outlier status
5  entitled that opinion to less weight. Accordingly, the Court will not reverse the ALJ's
6  decision for failure to properly weigh medical opinion testimony.

7  The Court notes that the ALJ did not completely discredit Dr. Shafran's opinion, but
8  rather gave it some weight as against other medical opinions. For example, Dr. Otto
9  concluded that Provencio could frequently stoop, kneel, crouch, and crawl. The ALJ,
10 however, agreed with Dr. Shafran and other physicians that Provencio's ability to do these
11 things was substantially limited. Thus, the ALJ considered Dr. Shafran's opinion and gave
12 it appropriate weight in light of all the medical evidence in the record.

13 Provencio also argues that the ALJ reached his residual functional capacity assessment
14 through a misinterpretation of the evidence. Provencio offers a series of disjointed examples,
15 the relevance of which is difficult to discern. In any event, the Court sees no evidentiary
16 interpretation that is not at least one of two rational interpretations. Given that the ALJ
17 selected from among rational interpretations, this Court must uphold the ALJ's decision.
18 *Orn*, 495 F.3d at 630.

19 Finally, at the very end of his opening brief, Provencio asks the Court to "grant a
20 'closed period' of disability from the original onset date through August 1, 2008." (Doc. 12
21 at 10.) Provencio appears to concede that he is no longer disabled, but was disabled from
22 December 11, 2004 through August 1, 2008. However, given that Provencio raises this issue
23 in the concluding sentence of his concluding paragraph, with no further elaboration or
24 authority, he has not sufficiently presented it. The decision of the ALJ is not erroneous in
25 any event.

IT IS THEREFORE ORDERED that the Clerk enter judgment affirming the final decision of the Commissioner of Social Security.  The Clerk will terminate this case.

DATED this 15th day of March, 2011.

_____
Neil V. Wake
United States District Judge